1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GOMEZ | )  1:05cv01178 JMD |
| | ) |
| | ) |
| | )  ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | )  SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Manuel Gomez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate Judge.[1]

---

[1]The parties consented to the jurisdiction of the United States Magistrate Judge.  On January 20, 2006, the Honorable Anthony W. Ishii assigned the case to Magistrate Judge Sandra M. Snyder.  On July 16, 2007, the Honorable David F. Levi reassigned the case to the undersigned for all purposes.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2      On April 17, 2000, Plaintiff filed his application for SSI, alleging disability since May

3  1991 due to cirrhosis of the liver, anxiety attacks, depression, diabetes, bursitis and a learning

4  disability.  AR 131, 132-135, 168.  After being denied both initially and upon reconsideration,

5  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 100-103, 107-

6  110, 111.  On January 28, 2002, ALJ David Wurzel held a hearing.  AR 23-77.  ALJ Wurzel

7  denied benefits on June 11, 2002.  AR 9-21.  On September 13, 2002, the Appeals Council

8  denied Plaintiff's request for review.  AR 4-6.

9      Plaintiff subsequently appealed to this Court.  AR 389.  On February 5, 2004, this Court

10 ordered a remand pursuant to 42 U.S.C. § 405(g) for further proceedings.  AR 389-401.  On

11 February 10, 2004, judgment was entered in favor of Plaintiff.  AR 388.  Thereafter, on May 18,

12 2004, the Appeals Council issued an order of remand for further proceedings and directed that a

13 subsequent application for SSI benefits filed by Plaintiff on September 27, 2002, be associated

14 with the remand.  AR 402-403, 404-405.

15     On December 14, 2004, ALJ Bert C. Hoffman, Jr., held a hearing.  AR 431-464.  ALJ

16 Hoffman denied benefits on February 15, 2005.  AR 349-360.  On July 6, 2005, the Appeals

17 Council declined to assume jurisdiction.  AR 343-345.

18     Hearing Testimony

19     Following the order of remand, ALJ Hoffman held a hearing on December 14, 2004, in

20 Bakersfield, California.  AR 431, 433.  Plaintiff appeared with his attorney, Geoffrey Hayden.

21 AR 433.  Vocational expert ("VE") Kenneth Ferra also appeared and testified.  AR 452-462.

22     Plaintiff testified that he was born on March 4, 1954, and completed the eighth grade.

23 AR 435.  He was in special education.  AR 435.  His writing is not good and his reading is poor.

24 AR 436.  He probably would need to have his brother or his wife to read him an article in the

25 newspaper.  AR 436.  He could make out some of it.  AR 436.  He used to be able to read and to

26

27

---

28      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  write more than his name in English.  AR 436-437.  He is forgetful now and he does not know
2  how to read any more.  AR 437.

3       Plaintiff testified that he is 5'5" and weighs 220.  AR 437.  He is right-handed.  AR 437.
4  He has a driver's license and occasionally drives a car.  AR 437.  He last worked in the early
5  `90s.  AR 437.  The only kind of work he has ever done is manual labor.  AR 437.  At the last
6  hearing, he testified that he worked three months as a security guard.  AR 438.  He did not
7  remember what year that was.  AR 438.

8       Plaintiff testified that he changed doctors because Dr. Lewis is no longer in the other
9  clinic.  AR 438.  He goes to "Polyclinic."  AR 438.  Dr. Brown is a physician there.  AR 438.
10 "Dr. Jordan" is a helper who is not an actual doctor.  AR 438.  Plaintiff believed that it said
11 Teresa Gomez on top of some information given to the ALJ because he is on "FDC' and his
12 daughter is on "FDC."  He is "on her case," so he thinks all the papers have her name on it.  AR
13 438.  The papers are about him.  AR 439.  Plaintiff testified that a physician's assistant named
14 John Lewis used to see him, but now it is "Jordan."  AR 439.

15      Plaintiff testified that he still goes to AA meetings.  AR 439.  The last time that he had
16 any kind of drink was `96 or `97.  AR 439.  He has not had any liquor since then.  AR 439-440.
17 He had trouble with drugs in the past.  AR 440.  The last time he used any kind of drugs was in
18 `88.  AR 440.  He never has been to prison.  AR 440.

19      Plaintiff testified that the main medical reasons that keep him from working are "a lot of
20 trouble concentrating," a lack of school, and a lack of education.  AR 440.  He testified that
21 "most of them" do not want him because he does not "finish, complete a task" when he is
22 supposed to finish it.  AR 440.  He has trouble finishing things.  AR 440.

23      Plaintiff testified that he has diabetes.  AR 440.  He takes pills, not insulin, for his
24 diabetes.  AR 440.  He did not know the name of the pills.  AR 440.  He takes them every day,
25 and some twice a day.  AR 441.  Information that Plaintiff turned in to the ALJ had three diabetic
26 medications on it.  AR 441.  Plaintiff testified that his medications cause him side effects--some
27 stuttering and some "forgetness."  AR 441.  He is compliant with his medications.  AR 441.

28

1   Some of them make him drowsy.  AR 441.  When he gets drowsy, he lays down during the day.

2   AR 441.

3        Plaintiff testified that he lives with his wife and daughter.  AR 441.  His wife's name is

4   Teresa Gomez.  AR 441-442.  Plaintiff does not pay the bills, his wife does.  AR 442.  He is not

5   in charge of it, because he does not like it.  AR 442.  He does not deal with it because he cannot

6   concentrate and he cannot do it.  AR 442.  His wife gets AFDC and food stamps.  AR 442.

7        Plaintiff testified that he has some cirrhosis of the liver.  AR 442.  He takes medication

8   for it.  AR 442.  It causes him a little bit of pain.  AR 442.  His stomach is upset sometimes, and

9   his kidneys hurt.  AR 442.

10       Plaintiff testified that he has trouble with his right ankle.  AR 442.  He has bursitis in it.

11  AR 442.  It affects his ability to walk and swells up.  AR 443.  He can "walk maybe about even

12  across the room, and maybe a little bit more."  AR 443.  It hurts and he sits down.  AR 443.  His

13  most comfortable position is sitting down.  AR 443.  He lays down sometimes, but most of the

14  time he sits down.  AR 443.

15       Plaintiff testified that he has a little back pain.  AR 443.  He did not know if it was the

16  upper or lower back.  AR 443.  He was told that he had a disc in his back that he thought was

17  fractured or something when he fell off of a ladder.  AR 443.

18       Plaintiff testified that he has bursitis in his shoulders.  AR 443.  In the last hearing, he had

19  a frozen shoulder.  AR 443.  It is his right shoulder.  AR 443-444.  The pain goes from his right

20  to his ankle and his leg.  AR 444.  It did not cause him any pain to lift his hand to take the oath

21  because he was sitting down.  AR 444.  It was noted that Plaintiff stood up when he said the oath.

22  AR 444.  It did not hurt when he stood up.  AR 444.  It only hurts when he stretches his right arm

23  out all the way up.  AR 444.  He never has had any surgery on his right shoulder.  AR 444.  He

24  does not have trouble grabbing things with his hands.  AR 444.

25       Plaintiff testified that he gets headaches.  AR 444-445.  He did not know why or if it was

26  side effects.  AR 445.  He is in pain in the mornings.  AR 445.  He gets stiffness in his shoulders.

27  AR 445.  He takes pills and then it swells from his right shoulder to his right ankle.  AR 445.  He

28  has not had any physical therapy.  AR 445.

1    Plaintiff testified that he sleeps through the night off and on.  AR 445.  He does not know

2    why he has problems sleeping.  AR 445.  Sometimes he wakes up and he cannot go back to

3    sleep.  AR 445.

4    Plaintiff testified that the heaviest thing he lifts and carries without pain is "[p]robably

5    about 10 pounds."  AR 445.  He can stand about 30 minutes before he feels he needs to sit.  AR

6    445-446.  He can sit about an hour or so before he feels he needs to stand.  AR 446.  Bending

7    forward only causes him problems when he bends down past his waist.  AR 446.  He cannot

8    kneel, stoop or squat all the way to the ground.  AR 446.

9    Plaintiff testified that he does not do any housework.  AR 446.  In response to questioning

10   from the ALJ, he testified that there would not be anything that would stop him doing a little

11   housework, "maybe light work," as long as it was nothing heavy like moving couches.  AR 447.

12   He could not do that eight hours a day.  AR 447.  He does not cook.  AR 447.  He used to do

13   grocery shopping, but his wife told him not to because he is "just too forgetful about everything."

14   AR 447.

15   Plaintiff testified that he bathes "only like once a month."  AR 447.  He did not know

16   why.  AR 447.  The last time he had a bath was two weeks before the hearing.  AR 447.  He uses

17   deodorant and soap.  AR 447.  He does not use it every day.  AR 448.  It had been two weeks

18   since he had any deodorant on.  AR 448.

19   Plaintiff testified that he does not go to church, to the movies or to visit friends.  AR 448.

20   He does not have any hobbies or do any sports.  AR 448.  He just watches a little TV.  AR 448.

21   For exercise, he will "walk around the house a little, walk around outside a little."  AR 448.

22   Plaintiff testified that he has been going to AA meetings "like twice a week" when his

23   friend picks him up.  AR 448.  At the meetings, he has a little group counseling and he listens to

24   the speakers who have had a lot of sobriety.  AR 448.  He is working on getting a sponsor.  AR

25   448-449.  He has been going to meetings on and off.  AR 449.  He does not go at nighttime,

26   when his friend goes, because when it gets cold his bones start hurting.  AR 449.  At the time of

27   the hearing, Plaintiff testified that he went to a meeting last Wednesday during the day at 1:00.

28   AR 449.  His friend picked him up.  AR 449.  He used to have a sponsor.  AR 449.  He is

1  working on step number six.  AR 449.  He never has been a sponsor for someone else.  AR 449.

2  He was told that he needs to be in the program longer and work with somebody one-on-one

3  before he can be a sponsor.  AR 449-450.  He cannot be a sponsor now because he is in groups.

4  AR 450.

5      Plaintiff testified that he is having problems with depression.  AR 450.  He takes

6  medication for it.  AR 450.  He did not know how the depression affects him because he did not

7  "know nothing about that" and the doctor did not explain it to him.  AR 450.  He testified that he

8  has lost interest in things.  AR 450.  He used to be more active.  AR 450.  He used to go out, go

9  fishing, work around the yard and "a whole bunch of different stuff."  AR 450.  He used to be

10  more social, but now he is not.  AR 450.

11      Plaintiff testified that one of the reasons he does not go to the store is because he forgets.

12  AR 450.  Sometimes he puts something down and then he is hollering at his wife or somebody

13  about what he did with it.  AR 450.

14      Plaintiff testified that he thought about suicide when he first stopped drinking.  AR 450-

15  451.  He is not thinking about it now because he has been going to AA and having one-on-one

16  counseling.  AR 451.  In the beginning, he saw or heard things that were not there.  AR 451.  He

17  does not see or hear things now.  AR 451.  He feels paranoid sometimes, thinking people are mad

18  at him or out to get him.  AR 451.  He feels like crying sometimes, and he cries "once in a

19  while."  AR 451.  He did not know how to answer the question of whether he was getting any

20  better.  AR 451.

21      Plaintiff testified that his medication works sometimes.  AR 451.  The doctors do not tell

22  him about side effects.  AR 451.  They do not tell him anything.  AR 451.  He tells them "stuff,"

23  but they do not answer back.  AR 452.

24      VE Kenneth Ferra testified at the hearing.  AR 453-462.  The VE reported that work as a

25  security guard is light and semiskilled without any transferable skills, work as a car detailer is

26  medium and unskilled, and manual labor is medium, unskilled work.  AR 452.  For the

27  hypotheticals, the ALJ asked the VE to assume a person of Plaintiff's age with limited education.

28  AR 452.  For the first hypothetical, the VE testified that a person who was unable totally to

sustain concentration or to complete tasks in two hour increments could not do any job.  AR 453.
The VE also testified that there were no jobs for a person who can stand or walk or sit for less
than four hours.  AR 453.  For the second hypothetical, the ALJ asked whether unskilled work
would be available for a person who can stand or walk four hours, can sit four hours, has no
restrictions using hands, has no restrictions using fingers or feet for repetitive motions, has no
restrictions in environmental factors, can lift 40 pounds occasionally,30 pounds frequently, 20
pounds constantly, can kneel, crouch, crawl, reach below the knees and reach above the knees
occasionally, can climb, stoop, reach waist to knees, reach waist to chest and chest to shoulders
frequently, and can balance constantly.  AR 453-454.  The VE testified that it appeared the
person would be capable of light, unskilled work with a sit/stand option.  AR 454.  The VE
identified jobs that would fall within those parameters to include cashier two with 18,000 jobs in
California to accommodate the sit/stand option and some assembly positions with 7,700 jobs in
California to accommodate the sit/stand option.  AR 455.

For the third hypothetical, the ALJ asked the VE to assume a person who is able to
perform at the medium exertion level with non-exertional limitations of occasional climbing
ramps and stairs, no reaching or working above shoulder level with the dominant right hand
extremity, mentally limited to simple, repetitive tasks with no more than average stress, little
interpersonal contact with supervisors or coworkers, no interpersonal "conflict" with the public,
and a moderate limitation in concentration, persistence or pace.  AR 455-456.  The ALJ defined
moderate as "a moderate limitation in this area is the individual is still able to function
satisfactorily."  AR 456.  The VE testified that there are jobs available.  AR 456.  The VE did not
have the jobs identified and could not give the ALJ an overall number because the VE had to
take into account the restrictions on reaching and occasional climbing.  AR 456.  The VE
proposed providing the ALJ with a written note of the number of jobs, the rationale and the
explanation.  AR 457.  The VE's proposal was acceptable to the ALJ and to Plaintiff's legal
counsel.  AR 457.

In response to questions from the Plaintiff's legal counsel, the VE testified that there
probably would not be a significant erosion of the simple, repetitive tasks due to the restriction

on no public contact because it was unlikely that very many of the simple, repetitive, manual, hands-on jobs were going to have a great deal of public contact.  AR 457.

When asked by Plaintiff's legal counsel regarding "hypothetical three," the ALJ reported that he used the hypothetical from the "old decision" by the Court.  AR 457-458.  In addition, the ALJ indicated that the definition of moderate came from the "medical source statement" and meant there was "a moderate limitation in this area, but the individual is still able to function satisfactorily."  AR 458.  The ALJ explained that a person who is moderately limited is an "average worker" whose work is "satisfactory."  AR 458.  The VE testified that you might go "somewhat below average than with that, because you're using the term satisfactory."  AR 459.  The VE indicated that there is going to be a range, with a low average and a high average.  AR 459.

Plaintiff's attorney defined "moderately limited" as an "impairment which affects, but does not preclude the ability to function."  AR 460.  The VE testified that there would be no jobs for a person with a moderate impairment who missed over two days of work per month.  AR 460.

For hypothetical four, Plaintiff's attorney asked the VE to assume medium exertion with the same limitations the ALJ provided except with markedly limited "ability to complete a normal work day and work week without interruptions from psychologically [sic] symptoms, and to perform at a constant pace without an unreasonable number and length of rest periods," and with markedly limited ability to be aware of normal hazards and take appropriate precautions.  AR 460.  Plaintiff's attorney defined "marked"( as derived from "HALLEX") to be an implication that "there is no practical useful sustained capacity for that item."  AR 461.  The VE testified that if the person is "markedly limited, the individual would not have the capacity to perform the activity based upon that definition," and there would be no jobs.  AR 461.

For hypothetical five, Plaintiff's attorney asked the VE to assume the person has impairments of social function, poor attention and concentration, difficulty maintaining social functioning, difficulty with concentration, persistence and pace, difficulty remembering instructions, difficulty responding appropriately to coworkers and supervisors, difficulty responding appropriately to usual work situations in a usual work setting, and can perform simple

1   repetitive tasks.  AR 461.  Plaintiff's attorney defined the level of difficulty as moderate to

2   marked.  AR 461.  The VE testified that when it is marked the person cannot do it and when it is

3   moderate he can.  AR 461.  The VE also testified that if marked was defined as a serious

4   limitation and the ability to function was severely limited but not precluded, then not all work

5   activities would be precluded.  AR 462.

6         On December 16, 2004, the VE sent a letter to the ALJ in response to hypothetical

7   question three.  The VE identified hypothetical three as: "Medium level of exertion, occasional

8   climbing, no reaching above shoulder level with the dominant right upper extremity.  Limited to

9   simple repetitive tasks.  Avoid stress. No public contact.  Moderate limitation in production and

10   pace as well as concentration."  AR 421.  The VE indicated that the following occupations were

11   compatible with the hypothetical:   Harvest Worker, Vegetable, with 15, 000 jobs in California,

12   Weeder Thinner with 10,000 jobs in California, and Sweeper/Cleaner, Industrial, with 5,000 jobs

13   in California.  AR 421.

14      <u>Medical Evidence</u>

15         Lab results from February 12, 1998, showed that Plaintiff had high glucose, high

16   cholesterol and high triglyceride levels.  AR 271, 274.   On February 19, 1998, Plaintiff sought

17   medical treatment at Chester Medical Clinic for his diabetes.  AR 268-269.  The provider noted

18   "DM poor control."  AR 268.  Plaintiff  was prescribed medication.  AR 268-269.  Lab results

19   from May 1998 again showed that Plaintiff had high glucose, high cholesterol and high

20   triglyceride levels.  AR 265-266.

21         On June 18, 1998, Plaintiff sought medical treatment for complaints of feeling nervous

22   and edgy.  AR 264.  Plaintiff was diagnosed with depression and instructed to discontinue

23   caffeine.  AR 264.  The provider referred Plaintiff to mental health.  AR 264.

24         On June 26, 1998, Plaintiff sought medical treatment for complaints of abdominal pain,

25   back pain, and a stiff neck.  AR 263.  The provider indicated that Plaintiff had cirrhosis of the

26   liver.  AR 263.  Plaintiff was diagnosed with depression.  AR 263.  The provider noted "no work

27   until July 26/98."  AR 263.

28

1    On August 20, 1998, Plaintiff saw board certified internist Ashmead Ali, M.D., for a

2 consultative internal medicine evaluation.  AR 200-205.  Plaintiff complained to Dr. Ali of

3 cirrhosis of the liver.  AR 200.  Upon examination, Plaintiff's liver was within normal limits.

4 AR 204.  Dr. Ali opined that the examination was not consistent with liver cirrhosis and that

5 Plaintiff had no functional limitations.  AR 205.

6    On September 3, 1998, psychiatrist Iyengar Malini, M.D., conducted a consultative

7 psychiatric examination of Plaintiff.  AR 208-209.  On mental status examination, Plaintiff's

8 mood was unremarkable and his affect was full and appropriate.  AR 209.  Plaintiff was oriented

9 and had fair insight and judgment.  AR 209.  Dr. Malini diagnosed Plaintiff with Substance

10 Abuse Disorder, Alcohol dependency, and assigned Plaintiff a Global Assessment of Functioning

11 ("GAF") of "Around 50."  AR 209.  Dr. Malini opined that Plaintiff did not seem to be

12 significantly depressed and was "able to manage his own benefit payments."  AR 209.  Dr.

13 Malini also noted that Plaintiff was in the Chemical Dependency Program at Kern Medical

14 Center.  AR 209.

15    On September 23, 1998, a state agency medical consultant completed a Physical Residual

16 Functional Capacity Assessment form.  AR 210-216.  The consultant opined that Plaintiff could

17 lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6

18 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or

19 pull without limit (other than as shown for lift and/or carry).  AR 211.  Plaintiff had no postural,

20 manipulative, visual, communicative, or environmental limitations.  AR 212-214.

21    On September 24, 1998, a state agency physician completed a Psychiatric Review

22 Technique form and noted that Plaintiff had the presence of a substance addiction disorder.  AR

23 223.  The physician opined that Plaintiff had slight restriction of activities of daily living and

24 slight difficulties in maintaining social functioning.  AR 224.  Plaintiff seldom had deficiencies

25 of concentration, persistence or pace.  AR 224.

26    On September 24, 1998, a state agency medical consultant completed a Mental Residual

27 Functional Capacity Assessment form.  AR 275-277.  The medical consultant opined that

28 Plaintiff had moderate limitations in his ability to understand and remember detailed instructions

1   and moderate limitations in his ability to carry out detailed instructions.  AR 275.  Plaintiff had

2   no limitations for "SRT" with abstinence.  AR 277.  On September 24, 1998, another Mental

3   Residual Functional Capacity Assessment form was completed.  AR 278-280.  The medical

4   consultant opined that Plaintiff had marked limitations in the ability to understand and remember

5   detailed instructions, in the ability to carry out detailed instructions, in the ability to complete a

6   normal workday and workweek without interruptions from psychologically based symptoms and

7   to perform at a consistent pace without an unreasonable number and length of rest periods and in

8   the ability to be aware of normal hazards and take appropriate precautions.  AR 278-279.

9   Plaintiff  had moderate limitations in the ability to maintain attention and concentration for

10  extended periods, in the ability to perform activities within a schedule, maintain regular

11  attendance, and be punctual within customary tolerances, in the ability to sustain an ordinary

12  routine without special supervision, and in the ability to work in coordination with or proximity

13  to others without being distracted by them.  AR 278.  Plaintiff also had moderate limitations in

14  the ability to interact appropriately with the general public, in  the ability to accept instructions

15  and respond appropriately to criticism from supervisors, in the ability to get along with

16  coworkers or peers without distracting them or exhibiting behavioral extremes, in the ability to

17  maintain socially appropriate behavior and to adhere to basic standards of neatness and

18  cleanliness, and in the ability to set realistic goals or make plans independently of others.  AR

19  278-279.  The consultant concluded that Plaintiff would be limited for "SGA under the

20  influence."  AR 280.

21      In February 1999, treatment notes indicated that Plaintiff had diabetes mellitus ("DM")

22  and depression.  AR 309.  On February 19, 1999, Plaintiff sought medical treatment for an upper

23  respiratory infection.  AR 308.  At that time, the provider also indicated that Plaintiff had

24  diabetes mellitus with "poor control" and hyperlipidemia.  AR 308.  The provider increased

25  Plaintiff's glucophage dosage and started him on Lipitor.  AR 308.

26      In early June 1999, Plaintiff sought medical treatment and complained of feeling very

27  anxious and uptight.  AR 258.   Plaintiff was referred to Kern Mental Health crisis line on June

28  11, 1999.  AR 258.

On June 10, 1999, Plaintiff sought medical treatment. AR 259. He complained of being stressed out and wanted counseling. AR 259. Lab results showed that Plaintiff had high glucose and triglyceride levels. AR 260. Subsequent lab results dated October 15, 1999, again showed that Plaintiff had high glucose and triglyceride levels, along with high cholesterol levels. AR 255-256.

On January 6, 2000, Plaintiff sought medical treatment for right shoulder pain. AR 253. On physical examination, Plaintiff had a tender right shoulder and was diagnosed with bursitis. AR 253. He was prescribed Naprosyn. AR 253.

On July 11, 2000, Plaintiff sought medical treatment for complaints of joint pain. AR 250. Plaintiff requested a referral to "Neuro." AR 250, 329. On examination, Plaintiff had a tender shoulder, knees and back. AR 250. Plaintiff was diagnosed with diabetes mellitus and arthritis. He was prescribed Naprosyn and referred to Dr. Fritch. AR 250.

On August 16, 2000, Plaintiff sought medical treatment for complaints of pain in his shoulder going down to his ankle. AR 247, 326. The provider continued Plaintiff on Naprosyn and prescribed Cipro. AR 247, 326. Lab results collected that same date showed high glucose levels. AR 248, 328.

On August 20, 2000, Plaintiff saw Ina Shalts, M.D., for a consultative psychiatric evaluation. AR 226-229. Plaintiff complained he was sick, his condition was getting worse and he had cirrhosis of the liver. AR 226. On mental status examination, Plaintiff had poor attention and concentration. AR 227. He reported hearing different voices, seeing shadows and things that were not there. AR 227. He feels paranoid. AR 227. He reported suicidal thoughts off and on and claimed he put a gun to his head the day before the examination. AR 227. He had a flat affect and depressed mood with decreased eye contact. AR 228. He had poor persistence and pace. AR 228. Dr. Shalts diagnosed Plaintiff with alcohol induced mood disorder, alcohol induced psychotic disorder, and continual alcohol dependence with a GAF of 35. AR 228. Dr. Shalts opined that Plaintiff had difficulty maintaining social functioning and difficulty with concentration, persistence and pace. AR 229. He had difficulty remembering instructions or responding appropriately to coworkers and supervisors. AR 229. He was able to understand,

1   remember and carry out simple instructions.  AR 229.  He would have difficulty responding

2   appropriately to usual work situations in a usual work setting and would not be able to manage

3   funds if they were granted to him.  AR 229.

4          On August 23, 2000, Plaintiff saw Emanuel Dozier, M.D., for a consultative internal

5   medicine evaluation.  AR 230-234.  Plaintiff complained of bilateral shoulder bursitis, right

6   ankle pain, anxiety and nervousness.  AR 230.  On physical examination, Plaintiff was alert and

7   oriented.  AR 231.  He walked with normal gait and without signs of pain.  AR 231.  He had

8   tenderness with pain on range of motion for the right ankle.  AR 232.  Plaintiff's right shoulder

9   had forward elevation of 120 degrees, abduction of 90 degrees, adduction of 30 degrees, external

10  rotation of 45 degrees, internal rotation of 20 degrees and backward extension of 20 degrees.  AR

11  232.  Dr. Dozier diagnosed Plaintiff with a frozen right shoulder with capsulitis and post

12  traumatic arthritis in the right ankle.  AR 233.  Dr. Dozier indicated that Plaintiff had labor-

13  restricting allegations related to his right shoulder with localized tenderness and limited range of

14  motion.  AR 233.  Dr. Dozier opined that Plaintiff could perform medium activity involving

15  occasional lifting of 50 pounds, frequent lifting of 25 pounds, standing and walking for 6 hours,

16  and sitting without restriction.  AR 233.  Dr. Dozier further opined that Plaintiff had postural

17  limitations on climbing due to the right shoulder and restrictions on reaching and gross

18  manipulation with the right shoulder.  AR 233.

19         On September 11, 2000, a state agency reviewer completed a Psychiatric Review

20  Technique form and noted that Plaintiff had alcohol abuse and an alcohol induced mood

21  disorder.  AR 283.  The reviewer indicated that Plaintiff had a disturbance of mood, accompanied

22  by a full or partial manic or depressive syndrome, as evidenced by psychomotor agitation or

23  retardation and difficulty concentrating or thinking.  AR 285.  The reviewer concluded that

24  Plaintiff had slight limitations in activities of daily living and in maintaining social functioning.

25  AR 289.  He often had deficiencies of concentration, persistence or pace.  AR 289.

26         On September 12, 2000, a state agency physician completed a Mental Residual

27  Functional Capacity Assessment form.  AR 292-294.  The physician opined that Plaintiff had

28  moderate limitations in the ability to understand and remember detailed instructions and in the

ability to carry out detailed instructions. AR 292. This opinion was affirmed as written by
Marina Vea, M.D., on December 6, 2000. AR 292.

On September 12, 2000, a state agency medical consultant completed a Physical Residual
Functional Capacity Assessment form. AR 235-241. The consultant opined that Plaintiff could
lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6
hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday. AR 236. He
could push and/or pull without limitation other than as shown for lift and/or carry. AR 236. He
had no postural, manipulative, visual, communicative or environmental limitations. AR 237-
239.

On September 23, 2000, Plaintiff visited Chester Medical Center for a blood sugar check.
AR 246. The provider continued to prescribe medications, including Glucophage. AR 246.
Treatment notes from October 23, 2000, noted that Plaintiff was "in AA." AR 325.

On January 8, 2001, Plaintiff sought medical treatment for a blood sugar check and slight
depression. AR 322. The provider diagnosed depression and started Plaintiff on Zoloft. AR
322. The provider also noted that Plaintiff had "poor control" of his diabetes mellitus. AR 322.
On February 8, 2001, treatment notes included a notation indicating that Plaintiff's diabetes
mellitus was "stable." AR 321. Lab results from March 5, 2001, showed that Plaintiff continued
to have high glucose, cholesterol and triglyceride levels. AR 319.

On March 14, 2001, chest and lumbar spine views were taken of Plaintiff. AR 320.
Plaintiff's chest was normal, but he had spondylolysis of the L5 vertebra. AR 320.

On August 17, 2001, Plaintiff sought medical treatment for complaints of back pain and
shoulder pain. AR 301. He was prescribed Darvocet and other medication. AR 301.

On February 4, 2002, Plaintiff sought medical treatment for withdrawal from a binge.
AR 296. The provider diagnosed Plaintiff with withdrawal and anxiety. AR 296. Plaintiff was
prescribed Ativan and other medication. AR 296.

On June 26, 2003, John Lewis, P.A., of Chester Medical Clinic, completed a statement of
provider regarding Plaintiff. AR 429-430. Physician assistant Lewis opined that Plaintiff had a
medically verifiable condition that would limit or prevent him from performing certain tasks.

1  AR 429.  Plaintiff's condition was expected to last until December 30, 2007.  AR 429.  Mr.

2  Lewis opined that Plaintiff could not work.  AR 429.  With regard to Plaintiff's mental

3  capacities, Mr. Lewis reported that Plaintiff had mental insufficiency with associated anxiety and

4  depression.  AR 430.  Mr. Lewis felt that Plaintiff was not capable of learning new skills unless

5  they were rudimentary.  AR 430.  Mr. Lewis indicated that Plaintiff was unable to sustain

6  concentration or complete tasks and could not be in any stressful situation.  AR 430.

7       On June 9, 2004, Edward P. Brown of the Poly Medical Clinic provided a medical report

8  indicating that Plaintiff had a medically verifiable condition that would limit or prevent him from

9  performing certain tasks and that Plaintiff was not able to work.  AR 424.  Subsequently, on July

10  9, 2004[3], Edward P. Brown provided another medical report indicating that Plaintiff was not able

11  to work.  AR 425.  Dr. Brown opined that Plaintiff's chronic condition was expected to last until

12  July 9, 2005.  AR 425.  With regard to Plaintiff's physical capacities, Dr. Brown indicated that

13  Plaintiff could stand/walk 0-2 hours at one time and could stand/walk for a total of 2-4 hours

14  during the day.  AR 426.  Plaintiff could sit 2-4 hours at one time and could sit for a total of 2-4

15  hours during the day.  AR 426.  Plaintiff had no restrictions in using his hands, fingers or feet for

16  repetitive motions.  AR 426.  Plaintiff had no environmental restrictions.  AR 426.  He could

17  kneel, crouch, and crawl occasionally and could climb and stoop frequently.  AR 427.  He could

18  balance constantly.  AR 427.  He could lift/carry 20 pounds constantly, 30 pounds frequently, and

19  40 pounds occasionally.  AR 427.  He could never lift or carry 50 pounds.  AR 427.  He could

20  reach below his knees and above his shoulders occasionally.  He could reach from his waist to

21  knees, waist to chest and chest to shoulders frequently.  AR 427.  With regard to Plaintiff's

22  mental capacities, Dr. Brown stated that Plaintiff was depressed.  AR 428.  Dr. Brown opined

23  that Plaintiff was unable to complete everyday work place, training, and/or educational routines,

24  unable to follow and understand simple written or oral instructions, and unable to sustain focused

25  attention.  AR 428.  Dr. Brown also opined that Plaintiff was unable to adapt to stresses common

26

27       [3]The record reflects a date of July 9, 2005.  AR 425.  That date appears to be in error.  Plaintiff signed his
consent for release of information on July 9, 2004, and the attached reports regarding Plaintiff's physical and mental
28  capacities are dated July 9, 2004.  AR 425, 426-428. The ALJ also pointed out the mistaken date to Plaintiff's legal
counsel during the course of hearing and noted that it should be 2004.  AR 462.

1  to the work, training, or educational environment, including decision making, attendance,

2  schedules, and interaction with supervisors or instructors.  AR 428.

3  <u>ALJ's Findings</u>

4  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the

5  alleged onset of disability.  AR 353, 359.  The ALJ also determined that Plaintiff's non-insulin

6  dependent diabetes mellitus, obesity, history of frozen right shoulder, lumbar spondylolysis at L5

7  with occasional back pain, psychotic disorder v. alcohol induced mood disorder and

8  polysubstance abuse in partial remission (by report) were considered "severe."  AR 353, 359.

9  The ALJ concluded that these impairments did not meet or medically equal one of the listed

10  impairments in Appendix 1, Subpart P, Regulation No. 4.  AR 359.  The ALJ found that

11  Plaintiff's allegations regarding his limitations were not totally credible.  AR 356-357, 359.  He

12  also found that Plaintiff retained the residual functional capacity ("RFC") to lift up to 50 pounds

13  occasionally, lift and carry up to 25 pounds frequently, and sit, stand, or walk for 6 hours in an 8-

14  hour day.  AR 359.  He was able to climb ramps and stairs occasionally and was unable to reach

15  or work above shoulder level with his dominant right extremity.  AR 259.  Plaintiff had the

16  mental capacity to understand, remember, and carry out simple repetitive tasks, with no more

17  than average stress, with little interpersonal contact with supervisors and coworkers, and with no

18  public contact.  AR 359.  He had moderate limitations in concentration, persistence or pace.  AR

19  359.  The ALJ determined that Plaintiff had the RFC to perform a significant range of medium

20  work.  AR 360.  Although the ALJ determined that Plaintiff's exertional limitations did not allow

21  him to perform the full range of medium work, the ALJ used the Medical-Vocational Rules as a

22  framework and found that there were a significant number of jobs in the national economy that

23  Plaintiff could perform.  AR 360.  Therefore, the ALJ concluded that Plaintiff was not under a

24  "disability."  AR 360.

25  **SCOPE OF REVIEW**

26  Congress has provided a limited scope of judicial review of the Commissioner's decision

27  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

28  the Court must determine whether the decision of the Commissioner is supported by substantial

1  evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla,

2  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v.*

3  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

4  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401

5  (internal quotation marks and citation omitted).  The record as a whole must be considered,

6  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

7  conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and

8  making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v.*

9  *Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

10  determination that the claimant is not disabled if the Commissioner applied the correct legal

11  standards and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez*

12  *v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

13  <u>**REVIEW**</u>

14       In order to qualify for benefits, a claimant must establish that he is unable to engage in

15  substantial gainful activity due to a medically determinable physical or mental impairment that

16  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

17  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

18  such severity that he is not only unable to do his previous work, but cannot, considering his age,

19  education, and work experience, engage in any other kind of substantial gainful work that exists

20  in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

21  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

22  1990).

23       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

24  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

25  C.F.R. § 416.920 (a)-(g) (2005).  Applying the evaluation process in this case, the ALJ found that

26  Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability;

27  (2) has an impairment or a combination of impairments that is considered "severe" (non-insulin

28  dependent diabetes mellitus, obesity, history of frozen right shoulder, lumbar spondylolysis at L5

1   with occasional back pain, psychotic disorder v. alcohol-induced mood disorder and

2   polysubstance abuse in partial remission) based on the requirements in the Regulations (20

3   C.F.R. § 416.920(c) (2005)); (3) does not have an impairment or combination of impairments

4   that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; (4)

5   does not have past relevant work; but (5) retains the residual functional capacity to perform a

6   significant range of medium work.  AR 359-360.

7        Here, Plaintiff essentially challenges the ALJ's determination at step 5 of the sequential

8   evaluation process regarding Plaintiff's residual functional capacity.  Specifically, Plaintiff

9   alleges that the ALJ failed to propound a complete and accurate hypothetical to the VE.

10                                          **DISCUSSION**

11  A.      Step 5-Hypothetical

12       Plaintiff contends that the ALJ's characterization of the severity of his mental

13  impairment regarding concentration, persistence and pace is legally and factually unsupported.

14  While Plaintiff does not appear to contest the ALJ's determination that he suffers from a

15  moderate limitation in concentration, persistence or pace, he does challenge the ALJ's definition

16  of moderate.  In this case, the ALJ concluded that Plaintiff had a moderate limitation in

17  concentration, persistence or pace.  The ALJ defined moderate as "a moderate limitation in this

18  area is the individual is still able to function satisfactorily."  AR 456.

19       Plaintiff argues the ALJ's definition is inconsistent with the Regulations.  To support his

20  argument, Plaintiff does not point to a contrary definition in the Regulations.  Instead, Plaintiff

21  claims that because "moderate" is a greater impairment than "none" or "mild," which are

22  classified in the Regulations as "non-severe," it should indicate that moderate equates with a

23  severe impairment and the ALJ's definition is unsupported legally.[4]  In evaluating mental

24  _____

25       [4]To the extent that Plaintiff equates a severity determination with a determination of residual functional
     capacity and ability to perform work in the national economy, Plaintiff's argument is misplaced.  As the

26   Commissioner notes, the determination of an impairment's severity is a step two analysis distinct from the
     assessment of a claimant's residual functional capacity and ability to perform work in the national economy at step

27   five of the sequential evaluation process.  20 C.F.R.§ 416.920a(c), (d) (2005); *Smolen v. Chater*, 80 F.3d 1273 1289-
     1290 (9th Cir. 1996).  At step two, the Commissioner determines whether the claimant has a medically severe

28   impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do
     basic work activities.  *Id.*; 20 C.F.R. § 416.920(c).  In contrast, at step five, the Commissioner must prove that, based
     on the claimant's residual functional capacity, age, education, and past work experience, the claimant can perform

1    impairments, the Regulations provide that the degree of functional limitation is based on the

2    following five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 416.920a

3    (c)(4) (2005).  The Regulations do not define "moderate."  However, the Regulations define a

4    "marked" limitation as one that is "more than moderate but less than extreme," which "may arise

5    when several activities or functions are impaired, or even when only one is impaired, as long as

6    the degree of limitation is such as to interfere seriously with your ability to function

7    independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P,

8    App.1, § 12.00(c) (2005) (referencing the evaluation of mental impairments set out in 20 C.F.R.

9    § 416.920a).  Thus, a "moderate" limitation, which is *less* than marked, would not "interfere

10   seriously" with a person's ability to function independently, appropriately and effectively.  As

11   such, the definition used by the ALJ regarding the ability to function satisfactorily does not

12   conflict with the functional limitations set forth in the Regulations for mental impairments.

13        Plaintiff also argues that the ALJ's definition is unsupported factually by reference to a

14   medical source statement.  In so arguing, Plaintiff contends that the ALJ could not rely on a

15   physician's legal or vocational determination.  Plaintiff's contentions are without merit.  When

16   questioned by Plaintiff's legal counsel regarding the source of the ALJ's definition, the ALJ

17   indicated that the definition was from "the medical source statement."  AR 458.  The Social

18   Security Administration includes a definition for the term moderate in Social Security Form HA-

19   1152-U3, which is entitled "Medical Source Statement Of Ability To Do Work-Related

20   Activities (Mental).  Form HA-1152-U3 describes moderate as "[t]here is moderate limitation in

21   this area but the individual is still able to function satisfactorily."  The ALJ's definition of

22   "moderate" comports with the definition promulgated by the Social Security Administration in

23   its medical source statement form.  It is not a physician's legal or vocational determination.

24

25

26   other work.  *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 416.920(a)(4)(iv), (g) (2005).  A claimant's residual functional

27   capacity is assessed at step five where, as here, the claimant does not have past relevant work.  20 C.F.R.§
     416.920(g).  In this case, the ALJ determined at step two that Plaintiff had an impairment or combination of

28   impairments that were considered severe.  AR 359.  At step 5 of the evaluation process, the ALJ provided the VE
     with the definition of moderate in determining whether a person with Plaintiff's abilities and limitations had the
     residual functional capacity to perform other work in the national economy.  AR 357-359, 455-457.

1    Further, the ALJ was able to assess Plaintiff's RFC to determine whether there were jobs

2  available for him in the national economy.  To that end, the ALJ had the VE determine, based on

3  the definition of the RFC found by the ALJ, whether Plaintiff would be employable.  The

4  vocational expert was able to incorporate the disabilities outlined by the ALJ and determine that

5  Plaintiff would be able to find employment in the national economy.  AR 455-457.  An ALJ may

6  take "administrative notice of any reliable job information, including information provided by a

7  VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (VE's recognized expertise

8  provides the foundation necessary for his or her testimony).  Moreover, there is substantial

9  evidence the VE understood the degree of limitation at issue in assessing what level of work a

10  person with Plaintiff's RFC could perform.  AR 458-459.  The VE acknowledged there would be

11  a range of individuals who could perform satisfactorily, with a high and a low average.  AR 459.

12                                    **CONCLUSION**

13
     Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial
14
   evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court
15
   DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social
16
   Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael
17
   J. Astrue, Commissioner of Social Security, and against Plaintiff Manuel Gomez.
18

19

20  IT IS SO ORDERED.

21
   **Dated:    July 31, 2007**                        **/s/ John M. Dixon**
22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

20